**SIGNED THIS: August 15, 2005**

                                                  **WILLIAM V. ALTENBERGER**
                                             **UNITED STATES BANKRUPTCY JUDGE**

---

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| FRANKLIN DIRCKS and KELLIE DIRCKS, | ) |
| | ) No. 03-85118 |
| Debtors. | ) |
| | ) |
| | ) |
| FRANKLIN DIRCKS and KELLIE DIRCKS, | ) |
| | ) |
| Debtor-Plaintiffs, | ) |
| | ) |
| vs. | ) Adv. No. 04-8298 |
| | ) |
| GLOBAL FINANCIAL CREDIT, L.L.C., | ) |
| | ) |
| Defendant. | ) |

**O P I N I O N**

Franklin Dircks ("Plaintiff-debtor") sustained personal injuries in a rear-end automobile accident on December 15, 2001, in Peoria, Illinois. The Plaintiff-debtor then retained attorneys to represent him in his personal injury claim. A personal injury claim was filed on behalf of the Plaintiff-debtor and suit was filed in state court on October 21, 2002.

On June 26, 2003, the Plaintiff-debtor contacted Global Financial Credit, L.L.C. ("Defendant"), via the internet, to apply for pre-settlement funding of his personal injury claim. In the application, the Plaintiff-debtor indicated that he was involved in an automobile accident and that he was represented by legal counsel. The Defendant subsequently confirmed that there was a $250,000 policy involved in the Plaintiff-debtor's underlying personal injury claim that arose from the automobile accident.

On July 23, 2003, the Plaintiff-debtor, represented by legal counsel, entered into a Non-Recourse Investment Agreement ("Agreement") with the Defendant whereby he contingently assigned a portion of the potential future proceeds from his personal injury claim. Pursuant to the Agreement, the Defendant advanced the Plaintiff-debtor $3,600 for immediate and necessary living expenses. The Defendant alleges that it was made clear to the Plaintiff-debtor that the advance was an investment and not a loan. The Defendant further emphasizes that Article IV of the Agreement provides that "Seller [Plaintiff-debtor] hereby expressly agrees not to declare bankruptcy in order to circumvent paying Purchaser [Defendant] said Investment Amount and Fee referenced in this agreement." The Agreement, in Article V, also provides that "[a]ny controversy or claim arising out of or relating to this agreement, or the breach thereof, may be settled by arbitration in the State of Connecticut, in accordance with the rules of the American Arbitration Association then in effect and the laws of the State of Connecticut." Article IX of the Agreement further provides that "[t]his Agreement shall in all respects be interpreted and construed and the rights of the Parties hereto shall be governed by the laws of the State of Connecticut."

On October 29, 2003, the Plaintiff-debtor and his wife ("co-debtor," collectively referred to as "Plaintiff-debtors"), filed a voluntary petition for bankruptcy protection under Chapter 7. On October 8, 2004, the Plaintiff-debtors filed the current adversary action to have this Court declare

2

as void the pre-petition Agreement between the parties. According to the Plaintiff-debtors, the Agreement constitutes a lien and/or assignment that is in contravention of Illinois public policy against the assignment of personal injury claims. The Plaintiff-debtors assert in their Complaint that this Court has jurisdiction over this proceeding under 28 U.S.C. § 157(K). The Plaintiff-debtors further indicate, although not in so many words, that this matter is before this Court upon their filing because the Trustee has abandoned the Plaintiff-debtor's personal injury claim and the co-debtor's loss of consortium claim. See Pls.' Compl. To Determine Invalidity of Lien/Assignment Against Personal Injury/Consortium Claim(s) ¶ 3 (Hereinafter referred to as "Complaint").

The parties have agreed to have this issue decided through memoranda of law. Based on the parties' pleadings, it is clear that they do not dispute the facts. Instead, the issues in this case are solely questions of law. The issue, the parties contend, is whether this case should be adjudicated according to the explicit choice of law provision contained in the Agreement. According to the parties, this is the dispositive issue because if the choice of law provision is enforceable, the Plaintiff-debtors concede that Connecticut law would apply, and under Connecticut law, the assignment of the personal injury claim would be enforceable.

The preliminary issue that this Court must first consider before addressing the issue raised by the parties is whether this Court has subject matter jurisdiction over this adversary proceeding. Although the Defendant has not raised the question of whether this proceeding is properly before this Court, "[t]his court has jurisdiction to determine its own jurisdiction." *In re Trafficwatch*, 138 B.R. 841, 842 (Bankr.E.D.Tex. 1992). Section 157 of the Judicial Code provides that "[t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made

3

solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). For example, despite the fact that the Defendant did not raise issues about the Court's subject matter jurisdiction, the court in *In re F/S Airlease II, Inc.*, 67 B.R. 428, 431 (Bankr.W.D.Pa. 1986), held that "pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), and specifically Title 28 U.S.C. § 157(b)(3), this Court may, upon its own motion, determine if the action in question constitutes a 'core' or 'related' proceeding." *See also In re Nanodata Computer Corp.*, 52 B.R. 334, 341 (Bankr.W.D.N.Y. 1985) ("[T]he bankruptcy court [is] required in all instances, whether the issue is raised by a party or not, to determine if a proceeding is 'core' or 'non-core.'"). Thus, in this case, this Court will first determine, *sua sponte*, whether it has subject matter jurisdiction over this proceeding.

In order to determine whether this Court has subject matter jurisdiction over this proceeding, it must be determined whether this proceeding falls within purview of a bankruptcy court's authority as established by the Judicial Code. 28 U.S.C. § 1 *et seq*. The Plaintiff-debtors state in the Complaint that "[j]urisdiction over this action as a core proceeding is proper pursuant to 28 U.S.C. § 157." Pls' Compl. ¶ 3. Section 157 of the Judicial Code provides in relevant part as follows:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
>
> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> * * *
>
> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after

4

considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157. Clearly, a bankruptcy judge's jurisdiction over bankruptcy cases and proceedings is not limitless. *See In re Bissonnet Investments LLC*, 320 F.3d 520, 525 (5th Cir. 2003) ("All federal courts are courts of limited jurisdiction. A bankruptcy court's jurisdiction is especially circumscribed and wholly 'grounded in, and limited by, statute.'") (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Specifically, a bankruptcy judge has jurisdiction only over those core proceedings "arising under title 11," or proceedings "arising in a case under title 11," or proceedings that are not core but are "otherwise related to a case under title 11." 28 U.S.C. § 157.

The Code does not define these terms, however, several courts, including the Seventh Circuit Court of Appeals has attempted to define these terms. "According to the Seventh Circuit, 'a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *In re Emerald Acquisition Corp.*, 170 B.R. 632, 639-40 (Bankr.N.D.Ill. 1994) (citing *Diamond Mortgage Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990)). Furthermore, "[a] proceeding 'arises under' title 11 if a party is claiming a right or remedy created by one of the specific sections of title 11." *Id*. at 640. "A proceeding 'arises in' a title 11 case if it relates to those administrative matters that arise only in bankruptcy cases." *Id*. "A proceeding 'relates to' the bankruptcy if it affects the amount of property available for distribution or the allocation of property among creditors." *Id.*

The Fifth Circuit, in its often-cited opinion, *Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)), held that:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. The [Bankruptcy Amendments and Federal Judgeship] Act [of 1984] does not definite "related" matters. Courts have articulated various definitions of "related", but the definition of the Court of Appeals for the Third Circuit appears to have the most support: "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."

Thus, pursuant to the *Wood* opinion, in order to determine whether a bankruptcy court has subject matter jurisdiction, it must preliminarily determine whether it has at least "related to" jurisdiction. The *Wood* Court further provided that a bankruptcy court only proceeds to consider and distinguish between proceedings "arising in," "arising under," or "related to" title 11 after it has established that at the very minimum, the outcome of the proceeding could conceivably effect the bankruptcy estate. *Id.* at 94.

In this case, in order to determine whether this proceeding is properly before this Court, it must be determined whether the outcome of the Plaintiff-debtors' Complaint could have any conceivable effect on the bankruptcy estate. At first blush, it would seem that this proceeding is at least "related to" the Plaintiff-debtors' Chapter 7 case, for, if this Court were to declare a lien against the Plaintiff-debtors as invalid, there could be a large effect on the his bankruptcy estate. Further, as the Plaintiff-debtors state in their Complaint, Section 157(K) specifically provides that "determinations of the validity, extent, or priority of liens" is a core proceeding.

However, an examination of the Plaintiff-debtors' Chapter 7 case and Complaint, as well as the Agreement in question, reveals that the proceeding in issue is not "related to" and will have no

conceivable effect on the Plaintiff-debtors' bankruptcy estate. In this case, the Plaintiff-debtors noted in paragraph 6 of the Complaint, that "the Trustee has abandoned in writing" the Plaintiff-debtors' personal injury/consortium claims.[1] Since the filing of the Complaint, the Trustee has filed a report of no assets and no distribution. Given his abandonment, this Court's determination of whether the Agreement is valid or invalid will have no effect on the bankruptcy estate. 11 U.S.C. § 554. *See, e.g.*, *In re Smith*, 313 B.R. 785, 793 (Bankr.N.D.Ind. 2004) (noting that where property has been abandoned by the Chapter 7 Trustee under § 554, this "*ipso facto* means that the property has no value as an administrable asset to a Chapter 7 Trustee"). Thus, although the Plaintiff-debtors may rightfully have standing to pursue this Complaint, *In re Ring*, 2005 WL 1526462, *2 (7th Cir. 2005) ("the claim may revert back to the debtor if the trustee chooses to abandon it as estate property"), since any result of this Complaint will have no conceivable effect on the bankruptcy estate, the Complaint is not properly before this Court. *See In re Schwarzwalder,* 242 B.R. 734 (Bankr.M.D.Fla. 1999); *In re Conway,* 1994 WL 617253 (Bankr.E.D.Cal. 1994).

It is also important to consider the Plaintiff-debtors' contention that this Court has jurisdiction over this proceeding under 28 U.S.C. § 157(K), which pertains to determinations regarding liens. The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). "There are three categories of liens, which are mutually exclusive: (1) security interests; (2) judicial liens; and (3) statutory liens." *In re Thompson*, 240 B.R. 776, 781 (10th Cir.BAP 1999). The Bankruptcy Code defines "security interest" as "lien created by an agreement." 11 U.S.C. § 101(51). The Code defines "judicial lien" as "lien obtained by judgment, levy, sequestration, or other legal or equitable process

---

[1] Earlier in the Chapter 7 case, the Trustee had employed an attorney to pursue the personal injury case for the benefit of the Plaintiff-debtors' creditors.

or proceeding." 11 U.S.C. § 101(36). The Code then defines "statutory lien" as "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien...." 11 U.S.C. § 101(53). In determining which type of lien may be present, we must look at "'the origin of the creditor's interest rather than the means of enforcement....'" *In re Thompson*, 240 B.R. at 781 (citing *In re Sanders,* 61 B.R. 381, 383 (Bankr.D.Kan. 1986). Based on the facts of this case, it is clear that the alleged lien is neither a judicial lien or a statutory lien; thus, the Agreement will only be considered a "lien" if it was created by agreement. However, a consideration of the Agreement reveals that it does not convey a "lien" to the Defendant, regardless of the fact that the Plaintiff-debtors refer to the interest conveyed to the Defendant as a "lien." In *In re Petry*, 66 B.R. 61, 62 (Bankr.N.D.Ohio 1986), the court determined whether the assignment of the future proceeds of a personal injury claim to a hospital-creditor passed on a property right or merely a right to be paid. In its analysis, the *Petry* Court noted that "[t]he general rule is that an assignment passes title to the proceeds or thing assigned at the time it is made." *Id.* at 62-63. In holding that the assignment did not constitute a lien, the Court provided that "[t]his assignment is not a lien but a transfer of title. It does not create a security interest for the simple reason that it does not secure payment, but it is the payment of the obligation." *Id.* at 63. In this case, if it is assumed that the Agreement was valid only for purposes of determining whether the assignment constituted a lien, it is clear that this Court would similarly find that the Agreement would not have created a lien as a "security interest" because it does not secure a payment, instead, the assignment itself serves as the payment of the obligation.

Accordingly, this Court concludes that it lacks subject matter jurisdiction over this proceeding. This conclusion is consistent with prior case law in which "Courts have consistently held that, if a controversy does not involve property in which the debtor's estate asserts an interest,

8

and the resolution of the claim will not affect the administration of the estate, then the bankruptcy court has no subject matter jurisdiction to adjudicate the claim." *In re World Wines, Ltd.*, 77 B.R. 653, 655-56 (Bankr.N.D.Ill. 1987). Because this Court finds that it lacks subject matter jurisdiction over the proceeding at issue, it is clear that this Court cannot proceed to analyze the parties' substantive issue and arguments.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###